[Cite as *Petroff v. Lebeau*, 2015-Ohio-84.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CRAIG PETROFF, ET AL. | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiffs-Appellees | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| GINA LEBEAU | : | Case No. 2014CA00065 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:           Appeal from the Court of Common
                                   Pleas, Case No. 2013CV02423




JUDGMENT:                          Affirmed




DATE OF JUDGMENT:                  January 12, 2015




APPEARANCES:

For Plaintiffs-Appellees                For Defendant-Appellant

CARI FUSCO EVANS                        DONALD GALLICK
4505 Stephen Circle, NW                 190 North Union Street
Suite 100                               Suite 102
Canton, OH  44718                       Akron, OH  44304

*Farmer, P.J.*

{¶1}   On August 28, 2013, appellees, Craig and Nancy Petroff, filed an eviction action against appellant, Gina LeBeau, for non-payment of rent.  On September 13, 2013, appellant filed a counterclaim alleging damages due to harmful toxins in the rental home.

{¶2}   A jury trial commenced on March 25, 2014.  The jury found in favor of appellees on their complaint in the amount of $1,288.98, and against appellant on her counterclaim.

{¶3}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶4}   "THE JURY VERDICT FINDING THAT DEFENDANT FAILED TO PROVE THAT PLAINTIFFS BREACHED THEIR OBLIGATIONS UNDER R.C. 5321.04 IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

II

{¶5}   "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT BARRED APPELLANT FROM INTRODUCING A MEDICAL EXPERT AT TRIAL."

I

{¶6}   Appellant claims the jury's verdict on her counterclaim was against the manifest weight of the evidence.  We disagree.

{¶7}   On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and

determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52; *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179.

{¶8} Appellant's counterclaim alleged appellees failed to comply with R.C. 5321.04 by renting a home "inundated with harmful toxins" (Count One), a breach of quiet enjoyment and constructive eviction (Count Two), and failure to upkeep premises (Count Three). Appellant argues she presented sufficient direct testimony of the mold in the home and the resulting compensatory damages. Appellant argues her expert on mold, Timothy Rollins, established the existence of mold in the home, and that she paid $1,800.00 to Mr. Rollins to dispose of her contaminated personal property which amounted to over $95,000.00. T. at 244, 300-307, 311, 315-316, 329-330, 347, 350, 418, 477, 482; Counterclaim Exhibits 2 and 10.

{¶9} Appellees both testified the home in question was their personal residence for about twenty-three years, and they had never experienced any mold related problems. T. at 8-9, 253. After moving out, appellees rented the home to the Tovar family for one year. T. at 11, 254. The Tovars never complained of mold. T. at 12, 255. After the Tovars moved out, appellees rented the home to appellant. Prior to moving in, appellant requested changes, including new hook-ups for her high efficiency washer/dryer and the internet. T. at 16-18. Upon moving in, appellant complained about the tub and toilet and mice in the house. T. at 22, 24, 27. Appellant had given appellees checks for a security deposit and first month's rent, but told them to hold the

check for the first month's rent.  T. at 20-21, 27-30.  Appellant complained of a "strong oppressive spirit in the home" and having a reaction to the well water, but never mentioned any mold.  T. at 30, 32.  From August 6 to 22, 2013, appellee Craig Petroff was at the home making the requested changes while appellant was present, and she never mentioned any mold.  T. at 37.  After the checks were denied by the bank for insufficient funds, appellees filed a three-day notice of eviction.  T. at 37-38, 259.  Thereafter, appellant asserted there was mold in the home.  T. at 38.

{¶10}  Appellees' mold expert, Jerry Miller, inspected the home on October 1, 2013.  T. at 132.  He immediately conducted a breath test to determine any odor.  T. at 135.  He did not notice anything that struck him regarding the smell of the home.  T. at 136.  He then conducted an air sampling test to determine if there was a contamination problem and then followed up with a visual walk-through.  T. at 133, 135.  He noticed "a little bit of growth" on the basement walls, but "nothing astronomical," and visible mold underneath the insulation in the attic.  T. at 137.  The results of the air sampling test indicated that any mold present in the basement had not gotten into the air.  T. at 144; Plaintiffs' Exhibit 15.  Mold levels for the basement and main level were "not enough to be of concern in our opinion."  T. at 146.  The visible mold in the attic had not impacted the rest of the home.  T. at 150.  In summary, the basement and the main floor were fine, but the attic could potentially cause a problem for a person allergic to Penicillin.  T. at 152.  Mr. Miller explained a tape lift test is generally conducted after an air sampling test to identify the exact species of mold present.  T. at 153-154.

{¶11}  Appellant testified to "very strong fatigue," headaches, vomiting, and nosebleeds after moving into the home.  T. at 442.   She was in the home for twenty

days before she vacated the home.  T. at 232.  She left before the three-day eviction notice was taped to the door.  T. at 233.  She testified to disposing over $95,000.00 in personal property due to mold contamination.  T. at 418, 477; Counterclaim Exhibit 2.

{¶12}  Appellant's expert, Mr. Rollins, examined the home around September 13, 2013.  T. at 285.  He first conducted a visual inspection and then a tape lift test.  T. at 283-284.  If no mold is found, "then you would do an air test."  T. at 284.  He visually observed mold on the basement walls, "some confirmation of mold" on the main level, and large quantities in the attic.  T. at 288, 292, 302; Counterclaim Exhibit 1.  The tape test results indicated the presence of mold in the home.  T. at 299-300, 303, 305-307; Counterclaim Exhibit 10.  Mr. Rollins rated the home a "Level 4" which is "pretty much" the worst.  T. at 304.  He stated the smell in the home was "quite pungent."  T. at 305.  He testified the home was uninhabitable due to the presence of mold.  T at 310-311, 329.  Mr. Rollins testified to throwing out many items on behalf of appellant, but did not take an inventory and couldn't "list all of them by memory."  T. at 336.  He could not produce any receipts from Kimble Recycling where he had disposed of the items.  T. at 349.  He testified he saw several objects with mold on them; however, he could not say what the objects were nor did he produce photographs of visible mold on objects.  T. at 337-340.  Mr. Rollins did not take swab tests for mold on any of the objects he advised appellant to throw away because "I know there is mold on them."  T. at 340.  He explained spores settle on items so he made a logical assumption that the objects contained mold.  T. at 341.  Mr. Rollins did not do any testing to determine if the mold was producing toxins.  T. at 344.

{¶13} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260.

{¶14} The jury was presented with competing expert opinions and could accept or reject both or one as they are the trier of facts. This, coupled with appellant's failure to complain about the mold when she liberally complained about other issues, her obvious abuse of appellees' good nature in presenting them with insufficient checks, and her failure to complain about mold until after the eviction action was initiated, lead us to the conclusion that the jury did not lose its way in finding against appellant on her counterclaim.

{¶15} Assignment of Error I is denied.

II

{¶16} Appellant claims the trial court abused its discretion in barring the introduction of any medical experts at trial. We disagree.

{¶17} By pre-trial order filed October 22, 2013, the trial court set the discovery cut-off date for January 10, 2014. On January 2, 2014, the date was extended to February 12, 2014. On February 4, 2014, appellant requested an additional extension. By magistrate's order filed February 12, 2014, the request was denied. A mediation conference took place on February 12, 2014. Appellant failed to appear. Thereafter, a trial date was set for March 24, 2014.

{¶18}  On March 14, 2014, appellees filed a motion in limine to bar any medical experts from testifying at trial as appellant failed to disclose any during discovery.  In her response filed March 21, 2014, appellant stated she was "intending to recover her medical expenses directly related to the treatment of her condition while in the subject property."  She stated she "will be presenting the medical billing for the purpose of recovering any and all costs consequential to the Counterclaim Defendant's negligence – including Counterclaimant's requiring of medical attention and care as compensatory damages of her claims."  In her trial brief filed March 24, 2014, appellant stated she "sought medical care as Mr. Rollins explained the symptoms and side effects of mold exposure, which matched with certain symptoms that Ms. LeBeau and her son were experiencing including dizziness, skin rashes and lung congestion.  Ms. LeBeau sought medical care, which caused her damages."  She indicated she would "offer evidence to establish the monetary damages incurred, as well as the significant pain & suffering, humiliation and disruption of life activities occasioned by the Petroffs' negligence and failure to maintain their premises."  She stated "Dr. Debra Gargiulo will testify as to Ms. LeBeau's appointments with her office at Green Primary Care and any prescriptions written in response to Ms. LeBeau's visit."  Also, "Mr. Byran Lewis will testify as to Ms. LeBeau's appointments with his office at Stark County Family Medicine and any prescriptions written in response to Ms. LeBeau's visit."

{¶19}  On the day before the trial commenced, the trial court granted appellees' motion in limine and excluded any "medical testimony as to mold as no medical expert was provided in discovery."  *See,* Judgment Entry filed March 24, 2014.

{¶20} "An order granting or denying a motion in limine is a tentative, preliminary or presumptive ruling about an evidentiary issue that is anticipated.  An appellate court need not review the propriety of such an order unless the claimed error is preserved by a timely objection when the issue is actually reached during the trial." *State v. Leslie,* 14 Ohio App.3d 343, 344 (2nd Dist.1984).  There is no evidence that appellant sought to introduce expert medical testimony during trial.

{¶21} The counterclaim, filed five months prior to the discovery cut-off date, sought compensatory damages for medical care costs and suffering.  Appellant's failure to disclose any medical experts cannot be impugned to appellees.

{¶22}  Assignment of Error II is denied.

{¶23} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

By Farmer, P.J.

Delaney, J. and

Baldwin, J. concur.

SGF/sg 120